Case number 13-1222. Brian Allen Ralcia, Petitioner v. Federal Aviation Administration. Mr. Feinberg for the amicus curiae, Mr. Yellen for the respondent.  The amicus Anthony Shelley in support of the petitioner Brian Wallaese. The FAA in this case fined Mr. Wallaese for violating the so-called interference regulation at 14 CFR 121.580. That regulation calls for or makes it improper for any person to assault, threaten, intimidate, or interfere with a crew member on a flight. Now Mr. Wallaese was not accused at any point of assaulting, threatening, or intimidating anybody. So this case is solely about the interference portion of that regulation. And I want to focus on the two substantive reasons why the FAA had no authority to fine Mr. Wallaese in the manner that it did. First, it had no statutory authority to do so. The regulation at issue was promulgated under the catch-all provision in 49 U.S.C. 44701A. All the rest of the provisions in that section deal with very specific items relating to the performance, design, inspection, servicing of aircraft, reserve supplies for parts for aircraft, oil and fuel, the maximum service time that an airman is allowed to stay on a plane, and things of that nature. They have absolutely nothing to do with governing passenger conduct on airplanes. And by the way, that's true not only of that particular section, but it's true of every single one of the sections in that entire chapter of the U.S. Code, Chapter 447 of Title 49. Was that argument made before the agency? Yes, I believe it was. Mr. Wallaese was proceeding pro se before the agency. He argued about the penalty provision, right? Well, he argued that the FAA had no authority to penalize him. The penalty provision really has no substance. It simply says the FAA can fine an individual for a whole series of violations, and this particular one is within that list. So there's no issue about the penalty provision. It's sort of just a pass-through. The question is, did he violate it? The validity of the interference regulation was never argued before the FAA, isn't that correct? Well, I'm not sure that's true. I don't know that it was expressed by Mr. Wallaese in the way we express it in the briefs, but I think he made the argument that the FAA doesn't have the authority to penalize him for what he was doing. If you're asking, did he specifically say this regulation was improperly promulgated, I don't know that. You don't know? Well, I don't believe he did in those specific terms. And there's a statute. The FAA has a statute like countless other agencies that if you don't raise an objection before the agency, you can't raise that objection in judicial review. Well, I guess our position is that he did raise that before the agency because he made the argument that the FAA has no authority to fine him under the statute. And the only thing that could mean is that the FAA had no authority under the substantive statute because there's nothing to the penalty statute. What do you make of the order appointing you to represent his interests that limits the presentation to the penalty statute? Well, I interpret that the same way. I can't imagine that this court would need assistance interpreting the penalty statute that really has no substance to it other than saying one can be fined for violating X, Y, and Z. Well, maybe that means that his arguments have no substance. Well, I don't think that is true. He gets into some detail about the statutory argument whether or not the FAA has the authority to issue these sorts of regulations. It's a little confused, I grant you, but that's what he's saying. Nothing about notice and comment in APA or anything. Well, he certainly doesn't mention notice and comment. To follow up on Judge Randolph's question, even if we assume that Petitioner raised the general issue attacking the civil penalty statute application to passengers, that you would be making perhaps different or broader arguments but that he generally raised that, do you agree that he did not raise the question of promulgation, valid promulgation of the statute? Of the regulation you mean? Of the regulation, I'm sorry. Well, that is less clear to me. He didn't do it in those terms, but it seems to me that that's what he's complaining about because there's nothing else for him to be complaining about. He clearly has an argument that says his being fined is beyond the scope of the agency's authority. And he may say, well, they have no authority to penalize me, but he's not saying there's nothing in the penalty statute that prevents the agency from penalizing me. So the only thing left is the agency has no authority to issue this regulation or that they have no authority to fine him given the regulation, even if it was assumed to be valid. I want to go back to the statutory interpretation question. And if you compare what's in section 44701 that is dealing only with things like maintenance, design, inspection, or the operations of an aircraft from an operator's perspective, compare that with what Congress did in a variety of other statutes where it very specifically has regulated passenger conduct. For example, it has said that you cannot smoke on an aircraft. That's an act of Congress. Are you making a Chevron 1 argument or a Chevron 2 argument? Well, both, but I think really Chevron 1. We think that there's no ambiguity here, that if you look at the entire statutory scheme, it's very clear that the statute at issue has nothing to do with the regulation of passenger conduct and has only to do with the regulation of the operators or maintainers of aircraft. So even though it doesn't say anything about operators and it just says regulations and minimum standards that the administrator may find necessary for safety and air commerce and national security, that that's completely unambiguous, that it only applies to operators and not people who might be riding an airplane? Well, I think when you look at all the statutory provisions, and there are a couple others that I'd like to cover, that is the conclusion that you get to, because all of the other provisions deal very specifically with the people who are behind the scenes or who are operating the aircraft, not the people who are traveling on the aircraft. And then compare that to the – and as I said, that's true of the entire chapter, not just this provision. Congress hasn't given the FAA the authority anywhere to regulate how passengers on any flight today can conduct themselves? No, I don't agree with that at all, and that's exactly what I was going to get into, so I appreciate the question. As I said, you can't smoke on an aircraft. We're all familiar with the phrase you can't tamper with, disable, or destroy a laboratory smoke detector. That's an act of Congress that says that, and you can be penalized for that. And more specifically, Congress has twice addressed this exact sort of issue, interference with others or even just the general cabin on an aircraft. In 49 U.S.C. 46-504, there's a criminal statute that requires that you either assault or intimidate a crew member and do so in a way that interferes with their duties. But most importantly, for present purposes, there's another statute at 46-318 that is called interference with cabin or flight crew that covers two different things. It covers anybody who assaults or threatens a crew member or other passenger, but it also separately covers anybody who takes any action that poses an imminent threat to the safety of the aircraft or others on the aircraft. And I think that that covers possibly even Mr. Wallace's conduct in this case, although he wasn't charged with that. Nobody ever put on any proof about whether he posed an imminent threat. But it certainly covers all sorts of things the government is afraid will happen if they're found to have exceeded their statutory authority. So, for example, stowing your aircraft baggage or securing tray tables during takeoff or landing, those are things that if you don't do, can pose an imminent threat. Or at least it's certainly reasonable for the agency to interpret it that way. And I believe that all four of the cases that they cite, the administrative cases where people have been fined for violating this regulation, those people would have violated the statute. And one wonders, why do we have a statute that specifically covers interference on aircraft and maybe even covered Mr. Wallace's conduct if Congress separately threw a catch-all provision that deals only with things like maintaining and operating aircraft? Why the FAA used or tried to use that authority is sort of beyond me, but that's exactly what we have here. I want to spend a minute or two also on our second argument, which is that the conduct at issue here is either not covered by the terms of the regulation itself or it's impermissibly vague. And the key to this argument is that when the FAA promulgated this interference regulation in 1999, it said that it was meant to cover, quote, the same conduct, end quote, as a criminal interference statute. Which, remember, requires not just interference, but interference that's caused by an assault or intimidation of a crew member, which we plainly don't have here. And the regulatory history is consistent with that. This regulation was originally promulgated, if you track back its history, in 1961 at the same time as the criminal statute. And it was meant to cover emergency situations like hijackings and things like that. And it is certainly reasonable for the FAA to interpret its interference regulation to cover only the sort of assault or intimidation conduct that's covered by the criminal statute. And that seemingly is what it did. And now it wants to say, well, that's not what it means. It means something far broader than that. And, oh, everybody was on valid notice of this because in four instances over 15 years, we've had individual adjudications where that's how we've interpreted it. Well, that's just not how it works. And what we have here is a situation at the very least where the agency's interpretations have been inconsistent. And the government, for example, cites a case called Shield Alloy that talks about inconsistent agency interpretations. And on the page after the page of the government cites a sentence that talks about, well, an agency can get deference for its views expressed during the course of litigation unless the interpretation conflicts with prior interpretations or amounts to a convenient litigating position. And that notion, I think, has been carried out repeatedly in the case law that if you flip-flop as an agency, A, you get considerably less deference, and B, that might make something arbitrary and capricious in the first place. And it also presents sort of a fairness and notice problem. That's where we get into some of the vagueness problems as well because how can Mr. Wallacey possibly be on notice of what this regulation is supposed to mean when there's a federal register notice that says it means exactly the same thing as a criminal statute, and then he's supposed to find out that occasionally over a period of time. What about the public notice in 2007 that's on the FAA website? Are you talking about the order that they issued? I guess it's an – I don't know if the order is the right term, but it was 2007 documents. Yeah, I hope we're talking about the same document. But they did issue an order, but as we explained in our reply brief, that order has absolutely nothing to do with the issue at hand. They are comparing in that order the civil statute, the penalty statute that I mentioned earlier, to their interference regulation. And they say, well, one is broader in one respect, one is broader in a different respect. But that has nothing to do with the issue at hand because the issue at hand is in the federal register notice, they said the regulation means exactly the same thing as the criminal statute. And that isn't mentioned in the order at all, at least not in the passage that they quote. So that doesn't help them in the least. Isn't there, I guess, a difference between, I guess, the agency's ability to – well, let me ask it this way. Even if we're troubled by the federal register discussion, if the agency has consistently interpreted the regulation otherwise to be more broad than the criminal statute and has enforced it as such, why doesn't that give the public notice? Well, in some sense, there is some public notice. But I think you just have to do the normal APA analysis that you would do when an agency flip-flops its position And the original position was issued closer in time, or in this case contemporaneously, with the issuance of at least the present version of the regulation. There are a number of cases that say, well, that would give more import to a view of an agency expressed contemporaneously. And third, the manner in which it was expressed, the federal register notice is a federal register notice issued to the public at large by the administrator of the FAA. And the cases that they cite are sort of periodic cases. There are only four of them over more than a 15-year period. And you sort of have to parse through them to figure out, well, is this – you know, what exactly is going on here? But that is not nearly as impactful in an APA sense as a contemporaneous interpretation by the FAA administrator in the federal register itself. And a number of cases support that. You know, the notion of inconsistent interpretations, the notion of contemporaneous interpretations, and the value that a court ought to give to that particular situation. Thank you, Your Honors. Good morning, Your Honors. Louis Yellen representing the FAA. I'd like to begin first by pointing the court to our discussion in our brief on pages 20 through 22 of the proceedings before the FAA. It identifies the arguments that Mr. Wallacey raised. He argued that his conduct did not constitute interference within the meaning of the rule. He raised for the first time his challenge to the authority, the legal authority of the FAA, to issue civil penalties to passengers in his opening appellate brief to this court. Subsequently, the court appointed an amicus. So even the challenge to the civil penalty statute authority was not raised before the FAA. But turning to the merits of the arguments that amicus has presented, I'd like to begin by pointing- We've held that if someone fails to raise an objection before the agency, it's jurisdictional.  We've held that under your governing statute, if someone fails to raise an argument or objection before the agency and tries to do it in court, there's a jurisdictional bar to us hearing it. Your Honor, we point out in the footnote in our brief that- Your footnote doesn't invoke the judicial review provision for the FAA. That was an error on our part. We certainly should have, Your Honor. But it's jurisdictional, so- Right, which would preclude further consideration of those issues. Turning to the arguments that amicus has raised, I'd like to begin by pointing out that the vast majority of FAA regulations governing passenger conduct on board an aircraft derive from what we've termed the general safety statute. Regulations such as those governing the requirement to wear seat belts, exit row seating, the consumption of alcohol, the storage of bags, and what's at issue in this case, the interference rule, the rule prohibiting interference with crew members in the performance of their duties. Under amicus's theory, the FAA would lack statutory authority to promulgate any of those regulations. That would leave a substantial gap in what this court has called a comprehensive scheme for the regulation of the safety aspect of aviation that can't possibly be what Congress intended. I'd like to point out that counsel suggests that there were only four cases in which the FAA has instituted adjudications for violations of the interference regulation in the absence of any violence. That's simply not correct. Our brief cites four cases as examples. We say CEG. We did not string cite the full list. Doing a Westlaw search in preparation for oral argument, I counted 16 cases from the late 1990s to the present involving nonviolent behavior. In fact, there are FAA orders which expressly say violence is not a requirement. These are all public adjudications. They are binding agency interpretations of the agency's own regulation. They provide fair notice to the public about what is intended and required by the regulation. In fact, in other places in our brief, we point out that the agency has refused to impose penalties where an alleged violation of the rule did not involve intentional conduct or where an individual, after an initial action that did interfere, immediately corrected his or her behavior. Assault is not necessarily a violent offense. You're right, Your Honor. A touching can be an assault. Yeah, I think if the petitioner here had put his arm around the young lady, that wasn't violent, but it's an assault. Well, the regulation doesn't apply to assaults or threats against other passengers. It's an assault or, let me see. No, I'm not talking about the regulation. I'm talking about the word assault contained in the criminal statute and the theory of the amicuses that that only covers violent conduct. Assault covers more than that. Quite right. And any improper touching, involuntary, unconsented touching would qualify as an assault. I think that's quite right. But we don't even need to have that for a violation of the interference rule. The agency adjudication has a very long history. As I mentioned, there are 16 cases spanning 1998 up to before. But even if we were to conclude that, well, as a matter of construing the regulation, we'll give deference to that construction or we'll find that that's a reasonable construction, that's different than whether Mr. Wallacea was on fair notice of that interpretation, right? Those are two different analyses. I don't think that's right, Your Honor, because the public is assumed to be aware of adjudications, public interpretations by an agency. This isn't secret law. You didn't cite anything to support that proposition in your brief. I'm sorry, Your Honor? I don't believe you cited anything to support that proposition in your brief. Well, there was no argument to the contrary made. What Your Honor is suggesting is not something that either amicus or petitioner raised, that they were not on notice because of the lack of public. Well, they raised a notice argument. They said, look, what we were on notice of was what was in the Federal Register. Right. And we point out in response, Your Honor, that there were numerous agency adjudications, You didn't give us any authority for why that should trump what's in the Federal Register. I mean, that's the purpose of the Federal Register, right, is to give the public notice. I'm happy to speak to the Federal Register, and I'd like to in just a moment, but I should say first that they did not – you're certainly right. We did not cite a case for the proposition that agency adjudications put the public on notice. I would posit, Your Honor, that that's a basic principle of administrative law and that if that's not specifically challenged by petitioner or amicus, that basic proposition is implicit in the citation that we have made to all of the adjudications that spanned both before and after the regulation that amicus has identified. If I may turn to that particular regulation, the regulation we concede is confused. It makes an analogy to the criminal statute, and that does create a certain amount of confusion. But the regulation does not do what amicus purports. It is not an unambiguous endorsement of the idea that the interference regulation and the statute are coextensive. The 1999 regulation itself says the first reason it gives for not having notice and comment for the promulgation of the regulation was because it was making no substantive change to the interference rule. That was the first reason that was given. And both before and after the promulgation of this 1999 regulation, the agency had been applying the interference rule to passenger behavior that did not rise to the level of an assault or a threat. And so there is at most an internal conflict within the regulation. Now, that conflict might have been... As I understand it, the comment that this is covering the criminal statute is not in the regulation. It's in the preamble to the regulation. It was part of the explanation for why notice and comment was not necessary. And we say in our briefs that that's not... So it's the agency interpretation of a regulation that's getting promulgated, and over the years, the agency's interpretation is broader than the statement in the preamble. So you just said... I thought I heard you say that there's a tension between the regulation, etc., but it's not in the regulation. It's in the preamble. No, I'm sorry, Your Honor. If I said the regulation, I misspoke. There's a tension in that statement in the preamble. The tension is between, on the one hand, a statement in the preamble that the regulation does not substantively amend the rule, number one, and, number two, the statement in the preamble that the regulation or the suggestion that it's coextensive with the criminal statute. That is the tension that I'm referring to. Now, what I would say about that is that might have been a reason. These were both... This was part of an explanation for why notice and comment was not necessary. That might have been a reason for challenging the agency's decision not to have notice and comment in 1999. That is not a reason for construing the interference rule as applying to only the conduct covered in the criminal statute, given the long history of application to cases that do not involve acts of assault or threats or the like, and that involve interference of a non-physical nature. There's a possible argument under the Fox Supreme Court decision involving the FCC that the agency failed to recognize that it was changing the interpretation in any of these adjudications, but that argument wasn't made before the FAA. That argument certainly wasn't made before the FAA, and the closest thing that we have to that argument, Your Honor, is the statement in the reply brief of Amicus that, in fact, that the subsequent interpretations were legislative rules. That wasn't even made in Amicus's opening brief, so we would suggest that that is not properly before the Court. Mr. Yellen, do you believe that any of the arguments raised by Amicus are fairly before the Court? I think, Your Honor, because for the reasons that Judge Randolph pointed out before, because Mr. Wellesey did not raise the question about the statutory authority before the FAA that none of these arguments are properly before the Court, but to the extent that we're talking about what was within the scope of the Court's order, Amicus does make arguments about the proper promulgation of the regulations pursuant to the civil penalty statute. I think fairly construed, the order could be seen to suggest that that sort of an argument would be appropriate. I think the substantive challenges to the interference rule, both the statutory authority and the scope of the application of the interference rule, were both not raised before the agency and also not raised by Mr. Wellesey in his brief before this Court, which was the motivation, as we understand it, for the order. I just want to understand what the agency thinks is before us. So you would say, would you say then that the delayed promulgation argument or the vagueness argument is properly before us? The vagueness argument, no, because that goes to the scope of the rule. The delayed promulgation argument to which we respond at pages 52 and 53 of our brief, and I should say that Amicus makes two delayed promulgation arguments. One refers to the interference rule. The other refers to the civil penalty rules. And if I may speak for a moment to the, very briefly, to the alleged delay for the civil penalty rules, those rules were promulgated after notice and comment. The subsequent rule to which Amicus has objected made no substantive change to the rules that were previously promulgated pursuant to notice and comment in 1990. So any delay would have no application whatsoever to the rules that have bearing on this case. Other aspects of the rules were changed, and there was a 10-year delay between the initial notice of proposed rulemaking and the final rule. That's the delay that Amicus has referred to. But the final rule makes it absolutely clear that there was no change to the rules governing civil penalty procedures concerning passengers. Thank you, Your Honors. I want to just address a few points. The big statutory issue or one of them that Mr. Yellen just raised is this notion that the FAA can't do anything about it. And Judge Randolph, you raised this point about, well, it doesn't even need to be violent. And I agree with you, and we perhaps didn't use careful enough language in our brief about that. But the reality is the statutes cover all manner of things that the government is worried about. The criminal statute covers the assault and intimidation, not of another passenger, but of a crew member. But more importantly, it's the statutory provision for civil purposes in 46.318 that covers any action that poses an immediate threat to the safety of the aircraft or other individuals on the aircraft. So all manner of things, like not sitting down when you're supposed to, you could fall over and hit somebody, that sort of thing clearly can be covered, and I think all of the things that Mr. Yellen mentioned could be covered as well. On the point about this notice argument, we did make that in our brief, as Judge Wilkins, I think you pointed out, but the issue isn't whether there is notice. You can argue that the adjudications were, in some sense, notice. The question is what happens when you give, as an agency, conflicting notice, one notice that in the Federal Register preamble says one thing and then a bunch of adjudications that say the opposite thing. And the analysis there under the APA is quite clear. That sort of thing in and of itself can be arbitrary and capricious, and it can deny any deference to the agency, and of course you have the notice issues that come up because of that, because Mr. Wallacey didn't get fair notice of exactly what sort of conduct there would be penalized. And just on the point about what arguments were raised before the agency, Mr. Wallacey clearly raised an argument that the penalty section, 46301, does not authorize the FAA to assess the civil penalty in the case. And that's exactly what we're arguing. That statute is a pass-through statute. It simply says you can be penalized for violating a bunch of other things. And so if you can't then say, well, there's no authority under the other things that are incorporated into that statute, then it doesn't quite make any sense. There's no substantive part to the penalty statute itself that Mr. Wallacey raised as the FAA not having authority to use against the passenger. Thank you. Mr. Feinberg, you were appointed by the court to represent the petitioner in this case, and the court appreciates your assistance. It's mine and my firm's pleasure, Your Honor. Thank you. We'll be submitted.
judges: Brown, Wilkins, Randolph